THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-228-M

I.P., a minor child, by his grandfather and Next )
Friend DONALD G. NEWSOME, )
MICHAEL PRICE and CHANDLER )
PRICE, )
                                   )
                     Plaintiffs, )
                                   )
           v. )
                                     )
WAYNE COUNTY SHERIFF LARRY M. )
PIERCE, in his official capacity; SERGEANT )     **OPINION AND ORDER**
SCHOOL RESOURCE OFFICER BRANDY )
JONES, in her individual capacity; )
SERGEANT SCHOOL RESOURCE )
OFFICER SHATANA LATICE JONES, in her )
individual capacity; LIEUTENANT SCHOOL )
RESOURCE OFFICER WILLIAM KATES in )
his individual capacity; SERGEANT SCHOOL )
RESOURCE OFFICER MARION WALTON )
in his individual capacity; WESTERN )
SURETY COMPANY; MARK )
ARMSTRONG, individually and as employee )
for BUTTERFLY EFFECTS, LLC; BRITTNE )
BROOKS, individually and as employee for )
BUTTERFLY EFFECTS, LLC, BUTTERFLY )
EFFECTS, LLC, JOHN DOE 1 )
and JOHN DOE 2, )
                                     )
                     Defendants. )

RICHARD E. MYERS II, District Judge.

Defendants in the above-captioned action have filed two separate motions to dismiss

[DE-72, 77] the Second Amended Complaint [DE-63 ("Complaint" or "AC")].  First, Defendants

Mark Armstrong, Brittne Brooks, and Butterfly Effects, LLC (the "Butterfly Defendants") moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, respectively. [DE-72.] In this Court's prior opinion [DE-86], it resolved the Butterfly Defendants' arguments pursuant to Rule 12(b)(1) and regarding Plaintiffs' *Monell* claim for failure to investigate. Left unresolved were 12(b)(6) challenges to Plaintiffs' claims arising out of negligence and fiduciary duty and for breach of contract, intentional infliction of emotional distress and punitive damages, which are addressed in the instant opinion. Second, Defendants Sergeant Brandy Jones, Sergeant Shatana Latice Jones, Lieutenant William Kates, and Sergeant Marion Walton (the "Officer Defendants") moved to dismiss Plaintiffs' causes of action for unreasonable seizure, violations of free speech and kidnapping or false imprisonment under Rule 12(b)(6) for failure to state a claim. [DE-77.] For the reasons discussed herein, the Butterfly Defendants' motion to dismiss [DE-72] is granted in part and the Officer Defendants' partial motion to dismiss [DE-77] is granted in part. The Court assumes the parties' familiarity with the facts alleged.

    I.      Motion to Dismiss Legal Standard

To survive a motion to dismiss, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (citation and internal quotation marks

omitted).  In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, this Court shall "'accept as true all of the factual allegations contained in the

complaint,' and 'draw all reasonable inferences in favor of the plaintiff.'"  *Covey v. Assessor of*

*Ohio Cty.*, 777 F.3d 186, 192 (4th Cir. 2015) (citations omitted).  "While a plaintiff is not

charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her

complaint, a plaintiff *is* required to allege facts that support a claim for relief."  *Bass v. E.I.*

*DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see Iqbal*, 556 U.S. at 677-80.

However, in making this determination, the Court need not rely on "labels," *Twombly*, 550 U.S.

at 555, "nor need [] 'accept as true unwarranted inferences, unreasonable conclusions, or

arguments,'" *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Kloth*

*v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

    II.     The Butterfly Defendants' Motion to Dismiss

        A.  Claims arising out of Negligence and Fiduciary Duty (Counts 10-11 and 14-17)

The Butterfly Defendants challenge Plaintiffs' causes of action against them for negligent

infliction of emotional distress ("NIED") (Count 10), negligence (Counts 11 and 15), breach of

fiduciary duty (Count 14), negligent hiring (Count 16), and negligent training and supervision

(Count 17).  Defendants argue that each of these claims fails as a matter of law because Brooks

had no duty to intervene in the SROs' activities during the school lockdown or as Minor I.P. was

escorted to the lobby.  [DE-73 at 17-19.]

          i.  Legal Standard

To establish each of these claims, Plaintiffs must adequately allege that Defendants had a

duty, that Defendants breached that duty, causation and damages.  *See Estate of Mullins by*

*Dixon v. Monroe Oil Co., Inc.*, 349 N.C. 196, 201, 505 S.E.2d 131, 135 (1998) (negligence) ("under common law negligence principles, a plaintiff must offer evidence of four essential elements in order to prevail: duty, breach of duty, proximate cause, and damages." (citations omitted)); *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (fiduciary duty) ("that [defendant] breached a fiduciary duty owed to plaintiffs, proximately causing injury to them"). Plaintiffs must allege a causal connection between the alleged breaches of duty and the alleged injuries suffered. *See Smith v. Whitley*, 223 N.C. 534, 535, 27 S.E.2d 442, 443 (1943) (negligence) ("There must be a causal connection between the … negligence relied upon, and the injury inflicted. . . . The breach of duty must be the cause of the damage" (internal quotation mark and citations omitted)); *Dove v. Harvey*, 168 N.C. App. 687, 691, 608 S.E.2d 798, 801 (2005) (fiduciary duty) (affirming dismissal of complaint, "[e]ven assuming these alleged actions constituted a breach of fiduciary duty by defendant, plaintiff did not allege defendant's actions caused plaintiff damage.").

Putting aside the question of whether some independent duty to act or intervene existed, this Court finds that Plaintiffs' negligence and fiduciary duty-based claims against the Butterfly Defendants should be dismissed for failure to allege causation and damages. First, Defendant Brooks' failure to intervene as school officials escorted Minor I.P. to the lobby was superseded and insulated by the allegedly negligent actions of the Officer Defendants. "The general rule is that the intervening or superseding criminal acts of another preclude liability of the initial negligent actor when the injury is caused by the criminal acts." *Tise v. Yates Const. Co., Inc.*, 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997). "The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another[] is *reasonable unforeseeability* on the part of the original actor of the subsequent intervening act and resultant

injury. . . . This is true whether or not the alleged superseding act is criminal in nature." *Holt v. N. Carolina Dep't of Transp.*, 245 N.C. App. 167, 177, 781 S.E.2d 697, 704, *aff'd sub nom. Holt v. N. Carolina Dep't of Transp.*, 369 N.C. 57, 791 S.E.2d 458 (2016); *see also Al-Hourani v. Ashley*, 126 N.C. App. 519, 485 S.E.2d 887 (1997) (granting motion to dismiss on basis of intervening cause). Second, Brooks' failure to advocate on Minor I.P.'s behalf during his altercation with the Officer Defendants is not causally related to any injuries ultimately suffered as a result of that altercation. Although Plaintiffs fault Brooks for not alerting the Officer Defendants to Minor I.P.'s disability [AC ¶ 55], according to the Complaint, the Officer Defendants already knew of Minor I.P.'s autism [AC ¶ 57].

### ii. Analysis

First, any purported negligence resulting from Brooks' failure to inform or intervene as the school officials escorted Minor I.P. to the lobby has not been adequately pled because the subsequent actions of the Officer Defendants and the resultant injury to Minor I.P. were unforeseeable. The negligent conduct of an individual is superseded and insulated as a matter of law by the intervening and unforeseeable negligent or unlawful act of another that causes the injury. *See Holt*, 245 N.C. App. At 177, 781 S.E.2d at 704. Based on the Complaint, while it may have been foreseeable to Brooks that Minor I.P. would have some difficulty calming down in the lobby because it was not a "separate and segregated space" [AC ¶ 47], the chain of events which occurred could not have been: (1) school officials chose to escort Minor I.P. to the lobby rather than a quiet classroom [AC ¶ 47]; (2) the lobby was the center of lockdown activity [AC ¶ 47]; (3) the SROs escorted a seized student through the lobby [AC ¶ 48]; (4) this student was "at one point good friends" with Minor I.P. [AC ¶ 49]; (5) Minor I.P.'s condition significantly worsened as a result [AC ¶ 49]; (6) Minor I.P. failed to comply with the SROs lawful orders to

5

be quiet [AC ¶ 50]; and, as a result, (7) the SROs, allegedly, so abused their power as to constitute Fourth Amendment and state false imprisonment and battery violations [AC ¶¶ 50-57]. Although Brooks' inaction might have enabled Minor I.P.'s location in the lobby, that alone is insufficient to state a claim. *See Williams v. Smith*, 68 N.C. App. 71, 314 S.E.2d 279 (1984) (granting summary judgment in favor of defendant whose earlier negligence caused plaintiff to be in the location that he was eventually harmed by a third party).

Second, to the extent Plaintiffs attempt to recover for Brooks' failure to advocate for Minor I.P. by failing "to inform Defendant SROs that Minor I.P. had a disability which prevented him from following their commands given his emotional state" [DE-84 at 25; *see also* AC ¶ 55 ("Defendant Brooks of Butterfly Effects stood by in silence")], this, too, fails. As alleged, the SROs were already aware of Minor I.P.'s condition. First, Mrs. Price and SRO Walton, the school's lead SRO, spoke about Minor I.P.'s autism diagnosis over six months earlier. [AC ¶¶ 38-39, 51.] Second, the conduct of the other SROs during the assault similarly reveals their knowledge of Minor I.P.'s diagnosis. [AC ¶¶ 52 ("Defendant SRO Jones, a large female officer, verbally yelled at and insulted Minor I.P. (because of his autism)"), 54 ("Defendants SRO Bystander John Doe 1 and SRO John Doe 2 were present in the lobby . . . and took no action to inform the other Defendant SROs that Minor I.P. had autism (even though they each had actual knowledge of same)"), 57 ("While Minor I.P. was handcuffed, Defendant SROs [Brandy] Jones and Latice Jones insulted him and made disparaging remarks about his having autism").] Any purported failure of Brooks to inform the SRO Defendants of Minor I.P.'s autism diagnosis could not have caused his injury because, as alleged, the SROs already knew.

B.  Breach of Contract (Count 13)

The Butterfly Defendants allege that Plaintiffs have failed to allege a contract or a breach

thereof with sufficient specificity to survive a motion to dismiss. Plaintiffs counter that they have met the specificity required at this stage of the pleadings.

### i. Legal Standard

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 276, 827 S.E.2d 458, 472 (2019).

### ii. Analysis

The Butterfly Defendants first contend that Plaintiffs have not adequately alleged the existence of any contract between Butterfly Effects and Minor I.P.'s parents because, rather than providing specifics such as the title, date or text of the alleged contract, Plaintiffs merely state that Minor I.P.'s parents "hired" Butterfly Effects and that some unspecified "contract" existed, which is insufficient. [DE-73 at 21-22 [citing AC ¶¶ 22-23].] The Butterfly Defendants further argue that even if a contract existed, it did not cover the alleged breaches here. The Court considers these issues in turn.

### 1. Existence of a Contract

As an initial matter, Plaintiffs have adequately alleged the existence of a contract between Minor I.P.'s parents and Butterfly Effects. Although Plaintiffs must allege "the specific provisions breached," *Cantrell v. Woodhill Enterprises, Inc.*, 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968), Defendants overstate Plaintiffs' pleading burden. Plaintiffs are not required to identify the title or exact date of the contract, nor are they required to "set forth in [their] complaint the full contents of the contract . . . or to incorporate the same in the complaint." *RGK, Inc. v. U.S. Fidelity & Guaranty Co.*, 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977) (citation omitted). All that is required is that the allegations "give sufficient notice of the claim

7

asserted 'to enable the adverse party to answer and prepare for trial.'" *Id.* at 674, 235 S.E.2d at 238 (citation omitted); *cf.* Fed. R. Civ. P. 8(a). Plaintiffs are simply not required to allege the exact text of a contract to survive a motion to dismiss.

Here, Plaintiffs have alleged that Minor I.P.'s parents "hired" Butterfly Effects [AC ¶ 22] to "treat, supervise, assist, and guide Minor I.P. while he attended public school" [AC ¶ 131]. Pursuant to the "contract," Butterfly Effects was to develop a Behavior Plan "that would be implemented at school and at home" [AC ¶ 23] and assign a Behavior Technician to "implement the ABA methods in the Behavior Plan, if necessary, such that Minor I.P. could be an engaged and productive student while in the classroom" [AC ¶ 24]. Over the course of two years and three different Behavior Technicians, Butterfly Effects "was paid for its services" by Plaintiffs. [AC ¶ 146.] The Behavior Plan indicated that "Minor I.P. was to be taken to an empty classroom" in the event of an outburst [AC ¶¶ 25, 47] and when that did not occur, Plaintiffs allege, Butterfly Effects violated the contract [AC ¶ 132]. Defendants surely have notice of the purported contractual obligations at issue.

## 2. Breach of Contract

Although Plaintiffs have alleged the existence of a contract, it is a closer call whether they properly allege a breach of its terms. Plaintiffs allege that Butterfly Effects breached its contract by "failing to ensure its Behavior Technicians knew to communicate on Minor I.P.'s behalf while in school," "failing to ensure Minor I.P.'s Behavior Plan was followed at all times," and "by failing to form, and have in place, an emergency protocol plan for Minor I.P. for when certain interruptions or 'lockdowns' occurred at school." [AC ¶ 132.][1] Defendants counter that, instead, the Behavior Plan required Brooks to notify school officials of Minor I.P.'s outburst,

---

[1] This Court has no jurisdiction over the remaining breach of contract claims, arising out of Mark Armstrong's conduct. [DE-86.]

which she did, and no more.

At this stage, the Court declines to construe the contract alleged as narrowly as Defendants would have it. With all reasonable inferences in Plaintiffs' favor, they have adequately alleged a breach of contract by Butterfly Effects. In relevant part, Butterfly Effects was "was to treat, supervise, assist and guide Minor I.P. while he attended public school" [AC ¶ 131], including by creating a Behavior Plan "that would be implemented at school and at home" [AC ¶¶ 23-34]; pursuant to the Behavior Plan, "Minor I.P. was to be taken to an empty classroom" in the event of an outburst [AC ¶ 47]; and Butterfly Effects assigned a Behavior Technician who would "observe" Minor I.P. and "implement" the Behavior Plan where necessary [AC ¶ 25]. According to the Complaint, as school officials escorted Minor I.P. to the wrong location, Butterfly Effects' Behavior Technician, Brooks, failed to "implement" the Behavior Plan's provision that Minor I.P. be taken to an empty classroom, and, accordingly, Butterfly Effects breached its contract.

While Defendants are correct that the Complaint states, "the Behavior Plan instructed the Behavior Technicians to . . . call the front office of the school so that *school officials* could bring Minor I.P. to an empty classroom" [AC ¶ 25 (emphasis added)], the broader language used to describe Butterfly Effects' and the Behavior Technicians' obligations—i.e. to "implement," rather than 'initiate' the Behavior Plan [AC ¶¶ 23-25]—and Brooks' ongoing presence as Minor I.P. was escorted to the lobby [AC ¶ 47] defeat Defendants' argument that, as a matter of law, Brooks' responsibilities ceded at the classroom door. At this stage of the pleadings, the Court finds that Plaintiffs' breach of contract claim, as pled, survives the Butterfly Defendants' motion to dismiss.[2]

---

[2] Although Plaintiffs also did not allege causation and damages with respect to their breach of contract claim, see *supra* II.A.ii., North Carolina law indicates that a breach of contract claim

9

C.  Intentional Infliction of Emotional Distress ("IIED") (Count 9)

i.  Legal Standard

To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Piro v. McKeever*, 245 N.C. App. 412, 417, 782 S.E.2d 367, 371 (2016) (citation omitted). "North Carolina courts have 'set a high threshold for finding that conduct meets" the extreme and outrageous standard. *Hall v. Charter Commc'ns, LLC*, No. 3:17-cv-00497-GCM, 2018 WL 651345, at *3 (W.D.N.C. Jan. 31, 2018) (quoting *Dobson v. Harris*, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd in part on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000)). "[T]he conduct must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994) (internal quotation mark and citation omitted).  Whether conduct is considered "extreme and outrageous" is a question of law for the court to determine.  *Johnson v. Colonial Life & Accident Co.*, 173 N.C. App. 365, 373, 618 S.E.2d 867, 872-73 (2005).

ii.  Analysis

The Butterfly Defendants first argue that Plaintiffs have not properly alleged which

---

may survive where a technical breach is alleged and at least nominal damages are available. *See Prime Commc'ns, L.P. v. Ragsdale Liggett, PLLC*, No. 5:19-CV-238-FL, 2019 WL 5677928, at *6 (E.D.N.C. Oct. 31, 2019) (declining to dismiss breach of contract claim where defendant argued plaintiff had failed to "meet the element of damages resulting from the breach" because "[i]ri a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least." (citing *Bryan Builders Supply v. Midyette*, 274 N.C. 264, 271, 162 S.E.2d 507, 511-12 (1968))); *cf. Zacks v. NetJets Inc.*, No. 11-2537, 2011 WL 4387147, at *2 (D.N.J. Sept. 20, 2011) (addressing motion to dismiss and stating "[a]lthough we agree that Plaintiff does not appear to have suffered any actual damages, we find that there has nevertheless been a technical breach of the contract susceptible perhaps to nominal damages.  Accordingly, we decline to dismiss the breach of contract at this stage of the litigation.").

conduct is the subject of their IIED claim because Count 9 only refers to the conduct "described in the above paragraphs." [DE-73 at 19 [citing AC ¶ 102].] They further argue that Brooks' failure to act—failing to interfere with or inform law enforcement or school officials—does not constitute conduct sufficiently egregious enough to support a claim for IIED. [DE-73 at 20.] Plaintiffs counter that the extreme and outrageous character of any conduct may arise from an actor's knowledge and disregard of peculiar susceptibilities of the plaintiff—here, Minor I.P.'s autism spectrum diagnosis. [DE-84 at 25-27.]

As a preliminary matter, Defendants' contention that Plaintiffs must allege which specific acts in their Complaint constitute their IIED claim fails. *See Barrett v. Board of Educ. of Johnston Cty., N.C.*, 13 F. Supp. 3d 502, 517 (E.D.N.C. 2014) (court reviewed all the facts alleged even when complaint did not specify which allegations formed the basis for plaintiffs' IIED claim). Ultimately, however, Plaintiffs' allegations fail to state a claim against Brooks. This Court concludes that the character of Brooks' alleged inactions at the operative time—i.e. standing by passively as Minor I.P. was arrested and confined—does not merit the level of condemnation necessary to sustain a claim under North Carolina's IIED case law. Each case Plaintiffs cite reveals their pleading deficiency: each is based on the affirmative *action*—rather than *inaction*—of some putative tortfeasor and all except one dismiss each plaintiff's respective IIED claims. *See McKeever*, 245 N.C. App. at 412, 782 S.E.2d at 369 (affirming dismissal of IIED claim brought by father against son's therapist, where therapist allegedly suggested to child that his father had committed sexual abuse upon him); *Briggs v. Rosenthal*, 73 N.C. App. 672, 327 S.E.2d 308 (1985) (affirming dismissal of IIED claim brought by parents against author and publisher that published magazine article negatively describing their son who had been killed in an automobile accident); *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349,

355, 595 S.E.2d 778, 783 (2004) (on summary judgment, holding that evidence that defendant threatened, yelled at, and threw an object at an employee was "not … evidence sufficient to support a finding of the element of extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress"); *Holloway v. Wachovia Bank & Tr. Co.*, 339 N.C. 338, 344, 452 S.E.2d 233, 236-37 (1994) (displaying and aiming a firearm at the plaintiffs survived summary judgment). The combination of acts and omissions alleged by Plaintiffs could not be found to "go beyond all possible bounds of decency" nor could it "be regarded as atrocious and utterly intolerable in a civilized community." *Wagoner*, 113 N.C. App. at 586, 440 S.E.2d at 123 (internal quotation mark and citation omitted); *cf. Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 690-92 (E.D.N.C. 2013) (gathering cases); *Guthrie v. Conroy*, 152 N.C. App. 15, 21-26, 567 S.E.2d 403, 408-411 (2002) (gathering cases).

### D. Punitive Damages (Count 18)

#### i. Legal Standard

North Carolina's punitive damage regime is defined in N.C. Gen. Stat. § 1D-15. A plaintiff must prove, by "clear and convincing evidence," that "the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud[;] (2) Malice[;] (3) Willful or wanton conduct." N.C. Gen. Stat. §§ 1D-15(a)-(b) (2017). In order to recover punitive damages from a corporation, "the officers, directors, or managers of the corporation" must have "participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." *Id.* § 1D-15(c). Relevant here, Chapter 1D of the General Statutes also specifically defines "[m]alice" and "[w]illful or wanton conduct" for purposes of punitive damages: "'Malice' means a sense of personal ill will toward the claimant that activated or

incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant . . . . 'Willful or wanton conduct' means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence." *Id.* § 1D-5.

### ii. Analysis

The Butterfly Defendants contend that the Complaint does not allege any such required "aggravating conduct." [DE-73 at 22.] They further argue that Plaintiffs cannot recover punitive damages against Butterfly Effects, LLC, specifically, because Plaintiffs have not alleged that Butterfly Effects' officers, directors or managers condoned the action of its employees. [DE-73 at 23.] Plaintiffs respond that they have adequately alleged an IIED claim, and that where an IIED claim is alleged, so, too, are punitive damages. [DE-84 at 27-28.] They further claim that Butterfly Effects condoned the actions of its employees when it failed to act after Armstrong initially violated the Behavior Plan. [DE-84 at 28.]

Plaintiffs have not adequately alleged an IIED claim, see *supra* Section II.C.ii., and their claim for punitive damages fails for the same reasons. Brooks' alleged misconduct—failing to intervene in school disciplinary actions or law enforcement activities after requesting school officials' help in accordance with the Behavior Plan—is neither "extreme and outrageous" under North Carolina's IIED case law nor "wanton and willful" or done with "malice" under its punitive damage regime. *See Orban v. Nationwide Tr. Servs., Inc.*, No 5:12-CV-00016-RLV-DS, 2014 WL 6476235, at *10 (W.D.N.C. Nov. 19, 2014) (dismissing punitive damages request on same basis as dismissal of IIED and NIED claims), *affirmed in relevant part on reconsideration*, No. 5:12-CV-16, 2015 WL 4132935 (W.D.N.C. July 8, 2015).

13

As to Defendant Butterfly Effects, Plaintiffs' only theory for recovery is premised upon the entity's actions with respect to Armstrong [DE-84 at 28], over which this Court lacks jurisdiction [DE-86]. Because Plaintiffs cannot recover compensatory damages in this action against Butterfly Effects for any purported liability arising out of Armstrong's conduct, they similarly cannot recover punitive damages arising therefrom. *See* N.C. Gen. Stat. § 1D-15(a) ("one of the following aggravating factors was present and was *related to the injury for which compensatory damages were awarded.*" (emphasis added)).

III. The Officer Defendants' Motion to Dismiss

A. Unreasonable Seizure (Count 1)

The Officer Defendants have moved to dismiss Count 1, alleging an unreasonable seizure in violation of the Fourth Amendment, against them for failure to state a claim.

i. Legal Standard

While, "[i]n most instances, the Fourth Amendment forbids searches and seizures of citizens absent a warrant supported by probable cause . . . . [s]earches of students conducted by school officials, however, are subject to a lesser degree of procedural scrutiny," which "respects the interests that educators have in 'maintaining security and order' in schools." *Wofford v. Evans*, 390 F.3d 318, 325-26 (4th Cir. 2004) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985)). The parties agree on the standard applicable [DE-78 at 10; DE-85 at 10] to Plaintiffs' claim of an unreasonable seizure: "A seizure of a student need only be 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *E.W. v. Wake Cty. Bd. of Educ.*, No. 5:09-CV-198-FL, 2010 WL 1286218, at *5 (E.D.N.C. Mar. 30, 2010) (quoting *Wofford*, 390 F.3d at 326); *see also Z.F. v. Adkins*, No. 2:18CV00042, 2019 WL 1559022, at *2 (W.D. Va. Apr. 10, 2019). The seizure of a student will

14

be justified at its inception "if there is a reasonable basis for believing that the pupil has violated the law or a school rule." *E.W.*, 2010 WL 1286218, at *5 (quoting *Wofford*, 390 F.3d at 326).

### ii. Analysis

#### 1. Justified at its Inception

Defendants argue that when Minor I.P. removed SRO Brandy Jones' hand from his forehead, Minor I.P. committed an assault and battery against an officer in violation of N.C. Gen. Stat § 14-33(c)(4) and violated the law, justifying his seizure as a matter of law. [DE-78 at 5-6]; *E.W.*, 2010 WL 1286218, at *5 (quoting *Wofford*, 390 F.3d at 326). Plaintiffs counter that, with all facts and reasonable inferences in their favor, they have adequately pled that it was unreasonable for the SROs to believe Minor I.P. had committed an assault and battery and that no assault and battery occurred. [DE-85 at 13-14.] More specifically, Plaintiffs argue that Minor I.P. (1) did not have the requisite mens rea to commit battery and (2) did not act with such force and show of violence that a person of reasonable firmness would be in fear of immediate bodily harm, which Plaintiffs argue is a requisite for criminal assault and battery under North Carolina law. [DE-85 at 13-14 & n.5.] Plaintiffs finally argue that it was unlawful for Defendant Brandy Jones to place her hand on Minor I.P.'s forehead in the first instance and that Minor I.P. had the right to resist such unlawful seizure. [DE-85 at 14-15.]

Assuming, *arguendo*, that Minor I.P. was seized for purposes of the Fourth Amendment when SRO Brandy Jones placed her hand on his forehead, this Court holds, as a matter of law, that such a seizure would have been reasonable in the circumstances alleged. "Reasonableness is the appropriate benchmark to determine whether a seizure in the public school context survives Fourth Amendment scrutiny." *Shuman ex rel. Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 148 (3d Cir. 2005); *see also Doe ex rel. Doe v. Hawaii Dept. of Educ.*, 334 F.3d 906, 909

15

(9th Cir. 2003) ("A seizure violates the Fourth Amendment if it is objectively unreasonable under the circumstances."); *Caviness v. Durham Public Schools Bd. Of Educ.*, No. 1:95CV00878, 1996 WL 33657236, at *4 (M.D.N.C. Dec. 16, 1996) ("whether [] a seizure is unreasonable depends on all relevant contextual circumstances." (citing *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995))). Here, according to the facts alleged in the Complaint, during an ongoing search for contraband on school grounds, Minor I.P. "became very upset" and, in close vicinity to a suspect that was handcuffed and being escorted by two SROs, began "yelling at the SROs to release his friend." [AC ¶¶ 47-49.] "SRO Brandy Jones shouted at Minor I.P. to be quiet," but Minor I.P. did not stop yelling "because his emotions were out of control." [AC ¶ 50.] SRO Brandy Jones then ran toward Minor I.P., put her face within six inches of Minor I.P.'s face, and "placed her hand on his forehead, between his eyes." [AC ¶ 50.] In other words, Minor I.P. acted disruptively during an ongoing schoolwide search, and when Minor I.P. did not comply with SRO Brandy Jones' request that he be quiet and avoid significantly interfering with that mission, SRO Brandy Jones approached and placed her hand on Minor I.P.'s forehead in an attempt to get him to stop. As pled, SRO Brandy Jones' actions were reasonable due to the nature of the seizure, the ongoing lockdown, the proximity to a student seized pursuant to that lockdown for contraband, and the crowded and busy lobby in which this all occurred.

Plaintiffs have also failed to adequately plead that the SROs' seizure of Minor I.P. after he removed SRO Brandy Jones' hand from his forehead was unlawful. [AC ¶ 51.] As alleged, the SROs had a reasonable basis to believe that Minor I.P. violated the law—more specifically, that Minor I.P. violated N.C. Gen. Stat. § 14-33(c)(4) (2003), which prohibits assault and battery against a government official in the attempted discharge of his or her duties—and, therefore,

Minor I.P.'s initial seizure after he struck SRO Jones' hand was justified as a matter of law. *See E.W.*, 2010 WL 1286218, at *5 (quoting *Wofford*, 390 F.3d at 326) (initial seizure is lawful "if there is a reasonable basis for believing that the pupil has violated the law or a school rule."). The State must prove the following three elements under N.C. Gen. Stat. § 14-33(c)(4) (2003): (1) an assault (2) on a government official (3) in the actual or attempted discharge of his duties. *See State v. Highsmith*, 238 N.C. App 364, 768 S.E.2d 201 (Table), 2014 WL 7472971, at *5 (2014); *State v. Stitt*, 149 N.C. App. 669, 562 S.E.2d 607 (Table), 2002 WL 485205, at *1-2 (2002).

As to the first element, the parties disagree over whether a battery alone is sufficient to sustain a conviction for assault. "There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules." *United States v. Simmons*, 917 F.3d 312, 318 (4th Cir. 2019) (citing *State v Mitchell*, 358 N.C. 63, 592 S.E.2d 543, 547 (2004)). The parties' disagreement apparently stems from the fact that in North Carolina "[t]hree common-law definitions of assault have developed." *Id.* One is, as Defendants state, the "completed battery" formulation—"an assault conviction may be premised on proof of battery." *Id.* at 319 (citation omitted). Another is, as Plaintiffs state, "an overt act or an attempt . . . sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *Id.* (citation omitted).

Minor I.P.'s actions, as alleged by Plaintiffs, fit the 'completed battery' formulation of assault. Battery "is an assault whereby any force, however slight, is actually applied to the person of another directly or indirectly." *State v. Sudderth*, 184 N.C. 753, 114 S.E. 828, 829 (1922) (emphasis added); *see also State v. West*, 146 N.C. App. 741, 742, 554 S.E.2d 837, 840 (2001). Where a "criminal defendant intentionally touches or applies force to another in a manner that is neither consensual nor privileged, that defendant has committed a battery and,

17

necessarily then, an assault." *State v. Clay*, 174 N.C. App. 626, 621 S.E.2d 343 (Table), 2005

WL 3046634, at *2 (2005). The North Carolina Pattern Jury Instructions for Simple Assault

instruct courts to first ascertain whether a "battery" has occurred and, if so, to instruct the jury

with either of the following definitions of assault: "An assault is an intentional application of

force, however slight, directly or indirectly, to the body of another person without that person's

consent" or "[a]n assault is an intentional, offensive touching of another person without that

person's consent." *See* N.C. Pattern Jury Inst. – Crim., 208.41 Simple Assault (Involving

Physical Contact) (June 2019). In the misdemeanor assault on a female context, N.C. Gen. Stat.

§ 14-33(c)(2) (2003), which falls under the same general misdemeanor assault statute at issue

here, courts have similarly held that "assault on a female may be proven by finding either an

assault on *or a battery* of the victim." *West*, 146 N.C. App. at 743, 554 S.E.2d at 839-40

(emphasis added). The focus of the "completed battery" formulation is "not the hostile intent of

the defendant, but rather the absence of consent to the contact on the part of the plaintiff." *In re

K.C.*, 226 N.C. App. 452, 459, 742 S.E.2d 239, 244 (2013) (citation omitted). Here, as alleged,

there is no dispute that Minor I.P. touched SRO Brandy Jones without her consent [AC ¶ 50]

and, thus, the "completed battery" formulation of assault has been satisfied, and Minor I.P.'s

initial seizure was justified.

Plaintiffs are correct that Minor I.P. must act with "criminal intent" to be convicted of

assault and battery on an officer. [DE-85 at 13 n.5]; *see Simmons*, 917 F.3d at 319 ("Under any

of the three formulations, an assault conviction will be sustained only if the defendant acts

intentionally."). But, Minor I.P. is not on trial—whether he did or did not act with intention is

not at issue. Instead, the standard for whether the instant seizure was lawful and defeats

Plaintiffs' claim is only whether it was "reasonable" under the circumstances for the officer to

18

have believed a crime had occurred. *E.W.*, 2010 WL 1286218, at *5 (quoting *Wofford*, 390 F.3d at 326). Even if the SROs knew or should have known Minor I.P. suffered from autism [AC ¶¶ 51, 180], there are no facts alleged suggesting that they knew or should have known that Minor I.P. would react unconsciously to the touching, negating mens rea.

With regard to the remaining two elements of N.C. Gen. Stat. § 14-33(c)(4) (2003) (assault and battery against an officer), first, there is no dispute that the SROs were government officials [AC ¶¶ 11-14 (alleging that the Officer Defendants are "School Resource Officer[s] for the Wayne County Sheriff's Office . . .")], and second, because this Court has held that SRO Brandy Jones' placement of her hand on Minor I.P.'s forehead, assuming it was a seizure, was reasonable, the SROs were acting within the scope of their official duties. Accordingly, Plaintiffs have failed to adequately allege that the SROs' seizure of Minor I.P. was not justified at its inception.

## 2. Unreasonable in Duration and Manner

Plaintiffs argue that, even if the seizure was justified at its inception, its manner and duration were unreasonable. Defendants counter that Plaintiffs have not alleged that the manner and duration of detention were unreasonable because Minor I.P. did not comply with the SROs' orders, Minor I.P. lacked self-control and the duration of the detention was relatively short. [DE-78 at 6-8.]

Plaintiffs allege that in response to Minor I.P. "remov[ing] Defendant SRO [Brandy] Jones' hand from his face with his hand" without "any force at all," SRO Brandy Jones "slammed [Minor I.P.'s] head into the wall," before three other SROs grabbed him and knocked him out of his chair, "causing Minor I.P. to slam the side of his head and face into the radiator as he fell to the floor." [AC ¶¶ 50-51.] Minor I.P. was then removed from the lobby, away from

19

the student that caused his outburst, and taken to the principal's office. [AC ¶ 52.] There, despite being handcuffed, surrounded by multiple officers, isolated and compliant, Minor I.P. was allegedly yelled at and insulted, including for his autism, and forced to lie down on the floor of the principal's office for ninety minutes, thirty of which were spent in a "hog-tied" position. [AC ¶¶ 52-53.]

At all times, Minor I.P. was fourteen years old, 5'3" tall, and weighed 119 pounds. [AC ¶ 19.] By comparison, he was surrounded by at least three adults—one "large female" and "two large male[s]." [AC ¶ 52.] Notwithstanding the Officer Defendants' assertion that "[t]hroughout the incident" Minor I.P. "acted out, lacked self-control, [and] failed to follow the lawful commands from the Defendant Officers" [DE-78 at 8], the Complaint alleges that Minor I.P. was "quiet[] and unmoving" after being taken to the principal's office [AC ¶ 52]. In light of the circumstances alleged, including the violence involved in effectuating the arrest, Minor I.P.'s alleged compliance, age, size, nature of the infraction, the removed setting, and presence of multiple officers, Plaintiffs have adequately alleged that the manner and duration of Minor I.P.'s detention was unreasonable. *See T.L.O.*, 469 U.S. at 342 (requiring that the "measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction."); *see Wofford*, 390 F.3d at 326 (adopting the *T.L.O.* "rubric" to "claim[s] of illegal seizure" of students). Plaintiffs allege that the Officer Defendants, despite Minor I.P.'s nondisruptive and passive behavior in the principal's office, continued to *increase* the restrictions on Minor I.P., keeping him in handcuffs and forcing him to lie face down and hog-tying him. [AC ¶ 52.]

While Defendants are correct that some courts, in different contexts, have held that longer detentions were reasonable [DE-78 at 7], others have held that much shorter detentions

could be unreasonable. *See Doe ex rel. Doe*, 334 F.3d at 910 (no summary judgment where factfinder could conclude "five minute[]" seizure was unreasonable); *see also Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1305-1306 (11th Cir. 2006) ("handcuff[ing] [Plaintiff] for not less than five minutes . . . . was not reasonably related to the scope of the circumstances"). Here, unlike in *E.W.*, upon which Defendants heavily rely, Minor I.P. was "bound"; here, unlike in *E.W.*, there is no apparent reason stated in the Complaint that would render this length of detention under these conditions reasonable as a matter of law.[3] *See E.W.*, 2010 WL 1286218, at *7.

Taking the allegations in the Complaint as true, Plaintiffs' claim that the seizure was unreasonable is supported by adequate and sufficiently plausible allegations and thereby survives the Officer Defendants' motion to dismiss.

B. Free Speech (Count 5)

The Officer Defendants argue that Minor I.P.'s actions as alleged were inapposite to maintaining decorum—that Minor I.P. interfered with law enforcement duties, prevented the completion of the school lockdown, and interfered with the school's ability to return to normal operation—and, accordingly, his speech is not protected. [DE-78 at 10.] Plaintiffs counter that Minor I.P. was not in a classroom, that the lockdown had "primarily ceased," and, accordingly, Minor I.P. could not have caused any material disruption, as *Tinker* requires. [DE-85 at 19-20.]

---

[3] The parties did not brief whether Defendants are entitled to qualified immunity, so the Court declines to rule on the issue here. *See Kenney v. Charnock*, No. CIV.A. 2:05-0390, 2006 WL 995154, at *1 (S.D.W. Va. Apr. 13, 2006) ("[T]he Court finds it would be inherently unfair to rule on a qualified immunity defense with regard to Defendants' Motion to Dismiss when the issue was not briefed in that motion.").

i. Legal Standard

It is well-settled that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). However, it is also true that "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). As the Fourth Circuit has acknowledged, there is a "tension between students' right to free speech and school officials' need to control the educational environment." *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 436 (4th Cir. 2013). "[O]n the one hand we are faced with the exercise of the fundamental constitutional right to freedom of speech, and on the other with the oft conflicting, but equally important, need to maintain decorum in our public schools so that the learning process may be carried out in an orderly manner." *Id.* (alteration in original) (citing *Melton v. Young*, 465 F.2d 1332, 1334 (6th Cir. 1972)). *Tinker* "provides the basic constitutional framework for reviewing student speech," *Hardwick*, 711 F.3d at 435: that "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech," *Tinker*, 393 U.S. at 513. The Supreme Court has established three other exceptions, not applicable here, in which school officials can regulate speech: (1) vulgar or lewd speech; (2) speech bearing the imprimatur of the school; and (3) speech that can be plausibly interpreted as promoting illegal drug use. *Hardwick*, 711 F.3d at 435 (gathering cases).

i. Analysis

Plaintiffs have failed to adequately state a First Amendment violation because under the

circumstances alleged in the Complaint, Minor I.P.'s speech is not protected. As alleged, while in the lobby on school grounds, during a joint exercise between law enforcement and Rosewood Middle School to search for contraband on school property [AC ¶¶ 43, 47-48], Minor I.P. "became very upset and began yelling at the SROs" [AC ¶ 49], did not comply with SRO Brandy Jones' instructions [AC ¶ 50], and was detained by four SROs as a result [AC ¶ 51]. By preventing the lockdown from concluding, Minor I.P. prevented students from "changing classes" and continuing their "routine and schedule" [AC ¶ 45]; his interruption of the lockdown prevented the school from resuming its educational process and materially interfered with the school's work. *See Tinker*, 393 U.S. at 512-13 (behavior that "materially disrupts classwork . . . is not immunized by the constitutional guarantee of freedom of speech").

In *Chandler v. Forsyth Tech. Cmty. Coll.*, the plaintiff alleged that her free speech rights were violated when she refused to comply with a teacher's instructions and was punished. No. 1:15CV337, 2016 WL 4435227, at *1-4 (M.D.N.C. Aug. 19, 2016). The court held, however, that "a teacher restricting what could be said in an ongoing class (and, even more compelling, in response to instructions rather than in response to a debate or other viewpoint-driven activity) and [restricting] behavior in the classroom, including attempts to protest during class, is reasonable in context of the need to keep order in a classroom, to further the educational mission, and to allow the teacher to promote her lesson plan." *Id.* at *8. Similarly, even taking the events in the Complaint in the light most favorable to Plaintiffs, Minor I.P. engaged in loud and disruptive behavior, failed to respond to instructions that would have allowed the SROs to maintain control over the school lockdown, and interfered with the school's ability to resume its normal classwork. *Tinker* is plainly not, as Plaintiffs would have it, limited to the classroom setting. *Tinker*, 393 U.S. at 513 ("in class or out of it"). And the Complaint makes clear that

Minor I.P.'s outburst occurred as the joint operation between Rosewood Middle School and law enforcement was "ongoing." [AC ¶¶ 47 ("ongoing contraband search"), 48 ("While Minor I.P. was in the busy lobby area, two SROs escorted a handcuffed, Rosewood student directly past Minor I.P.").]

Finally, Plaintiffs argue that the SROs' interference with speech should be subject to some higher standard than that of other "school official[s]." [DE-85 at 21 n.7.] The Court sees no reason to fashion a separate standard for the behavior of SROs under the First Amendment, and the parties cite no precedent establishing a differing standard.

### C. Kidnapping/False Imprisonment (Count 6)

#### i. Legal Standard

The parties agree that Count 6 is a civil claim for false imprisonment under North Carolina law. [DE-78 at 8; DE-85 at 18.] "In North Carolina, the elements of a false imprisonment claim are as follows: (1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) against the plaintiff's will." *Rousselo v. Starling*, 128 N.C. App. 439, 449, 495 S.E.2d 725, 732 (1998) (citation omitted).

#### ii. Analysis

Defendants argue that a civil claim for false imprisonment always fails where probable cause exists for the seizure, that Defendants had probable cause that Minor I.P. violated N.C. Gen. Stat. § 14-33(c)(4), which prohibits assault and battery against an officer, and that Count 6 must be dismissed as a result. [DE-78 at 8.] Plaintiffs counter that probable cause did not exist because Minor I.P.'s "brief touch of Defendant SRO [Brandy] Jones' hand or finger was not a battery." [DE-85 at 19.] The parties' arguments echo those made with respect to whether Minor I.P.'s seizure was justified at its inception under the Fourth Amendment. *See supra* III.A.ii.1.

24

As Defendants state [DE-78 at 8-9], under North Carolina law, "[i]t is well settled that probable cause is an absolute bar to a claim for false arrest or false imprisonment." *McConnell v. Watauga Cty.*, No. 5:17-cv-195-MOC-DCK, 2019 WL 2344223, at *10 (W.D.N.C. May 31, 2019); *see also Massey v. Ojaniit*, 759 F.3d 343, 358 (4th Cir. 2014) (applying North Carolina law and stating: "False imprisonment also calls for the absence of probable cause."); *Cox v. Roach*, 218 N.C. App. 311, 326, 723 S.E.2d 340, 350 (2012) ("probable cause is also a bar for recovery for false imprisonment in both North Carolina and Virginia."); *Kitchen v. Miller*, No. 1:14-CV-00122-MR-DLH, 2016 WL 7478982, at *6 (W.D.N.C. Dec. 29, 2016) ("Thus, probable cause to arrest defeats claims for both false arrest and false imprisonment."). Whether an officer has "probable cause is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Probable cause exists when, under the totality of the circumstances known the officer at the time of the arrest, there is a "fair probability" that criminal activity has taken place. *Illinois v. Gates*, 462 U.S. 213, 246 (1983); *see also Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017).

The facts as alleged provided the Officer Defendants with probable cause to believe that Minor I.P. violated N.C. Gen. Stat. § 14-33(c)(4), and, accordingly, Plaintiffs' claim for false imprisonment against them fails. The Complaint alleges: (1) that Minor I.P. "touched" and "removed" SRO Brandy Jones' hand from his forehead [AC ¶¶ 50-51]; (2) that immediately after, SRO Brandy Jones seized Minor I.P. and "yelled, among other things, "he tried to assault me!" "detain him!" and "stop resisting!" [AC ¶ 51]; and (3) that the remaining Officer Defendants thereafter rushed over to assist [AC ¶ 51]. Minor I.P. touched SRO Brandy Jones' hand, and the other Officer Defendants saw and heard SRO Brandy Jones' reaction to that touching. In those circumstances, the Officer Defendants would have had probable cause to believe that Minor I.P. violated N.C. Gen. Stat. § 14-33(c)(4) under a "completed battery"

25

formulation of assault. See *supra*, Section III.A.ii.1. Because the Officer Defendants had probable cause to believe Minor I.P. committed a crime, Minor I.P.'s claim for false imprisonment necessarily fails.

IV.     Conclusion

For the foregoing reasons, the Court holds that the Butterfly Defendants' motion to dismiss [DE-72] is GRANTED IN PART. The Court, having previously dismissed Mark Armstrong [DE-86], further DISMISSES Brittne Brooks. With respect to the Butterfly Defendants, only Plaintiffs' breach of contract claim (Count 13) against Butterfly Effects, LLC survives.

The Court further holds that the Officer Defendants' partial motion to dismiss [DE-77] is GRANTED IN PART. The Court DISMISSES Count 5 against Defendant SRO Brandy Jones and Count 6 against the Officer Defendants.

In accordance with this Court's previous order, entered March 2, 2020 [DE-83], Defendants' outstanding motions to dismiss are now fully resolved and discovery is no longer stayed.

The parties are DIRECTED to have their Rule 26(f) conference within 21 days of the entry of this opinion, and to submit a proposed discovery plan to the Court no later than 14 days after the Rule 26(f) meeting.

SO ORDERED this the 24th day of April, 2020.


_____
RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE